UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x
MOISES LUCIANO,                                          :

                Plaintiff,                              :        <u>OPINION AND ORDER</u>

          -v.-                                                :        16 Civ. 5963 (GWG)

COMMISSIONER OF SOCIAL SECURITY,      :

                Defendant.                            :
---------------------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Moises Luciano brought this action seeking review of the Commissioner of Social Security's denial of his application for Supplemental Security Income disability benefits. See Complaint, filed July 26, 2016 (Docket # 2) ("Complaint"). The parties have cross-moved for judgment on the pleadings.[1] The case is before the undersigned on consent of both parties, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's motion for judgment on the pleadings is denied, and Luciano's motion for judgment on the pleadings is granted in part and denied in part.

I. <u>BACKGROUND</u>

    A. <u>Procedural History</u>

Luciano applied for Supplemental Security Income benefits on December 31, 2012. See

---

[1] Notice of Motion, filed Dec. 30, 2016 (Docket # 12); Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings, filed Dec. 30, 2016 (Docket # 13) ("Def. Mem."); Notice of Motion for Judgment on the Pleadings, filed Apr. 6, 2017 (Docket # 18); Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings, filed Apr. 6, 2017 (Docket # 19) ("Pl. Mem."); Memorandum of Law in Opposition to the Plaintiff's Cross-Motion for Judgment on the Pleadings and in Further Support of the Commissioner's Motion for Judgment on the Pleadings, filed Apr. 18, 2017 (Docket # 20) ("Def. Reply"); Plaintiff's Reply Memorandum, filed May 2, 2017 (Docket # 21) ("Pl. Reply").

1

SSA Administrative Record, filed Dec. 30, 2016 (Docket # 11) ("R."), at 7, 25, 52, 53.[2] The Social Security Administration denied Luciano's application on March 15, 2013. R. 63-66. Luciano requested a hearing before an Administrative Law Judge ("ALJ"), R. 67-69, and a hearing was held on February 19, 2015, during which Luciano appeared pro se, R. 23-51. In a July 30, 2015, decision, the ALJ handling Luciano's case found that Luciano was not disabled. R. 7-17. Luciano requested administrative review of the ALJ's decision on August 6, 2015, R. 22, and the Appeals Council denied that request on June 15, 2016, making the ALJ's disability determination the Commissioner's final decision, R. 1-3. Luciano, still acting pro se, brought this civil action on July 26, 2016, to review that final decision. See Complaint at 1-3. Before the filing of Luciano's cross-motion for judgment on the pleadings, counsel appeared on Luciano's behalf.

B.  The Hearing Before the ALJ

At Luciano's hearing, the ALJ began by informing Luciano of the benefits of representation. R. 26. The ALJ asked Luciano if he wished to proceed with the hearing without representation, and Luciano said "[w]e can go ahead." Id. The ALJ admitted exhibits identified as "1A through 7F" into evidence. R. 27; see R. 52-400. Luciano informed the ALJ that more recent mental health records from New York Presbyterian Hospital ("Presbyterian") may have existed, which the ALJ did not possess. See R. 27-30. The ALJ also noted, on his own, that Luciano's records from Metropolitan Mental Health Center ("Metropolitan") seemed incomplete and that he was "going to have [his] office request their records." See R. 29.

---

[2] While the parties agree that Luciano's application was filed on December 31, 2012, Pl. Mem. at 1, 3; Def. Mem. at 1, we note that Luciano's Application Summary for Supplemental Security Income is dated January 8, 2013, and recites that "[o]n January 8, 2013, [Luciano] applied for Supplemental Security Income." R. 108.

2

At the time of the hearing, Luciano was 46 years old. R. 31-32. Luciano completed two years of high school but did not graduate. R. 32. He obtained his GED in Puerto Rico around the age of 18. Id. Luciano was not working and could not remember the last time he worked, though he estimated it was ten years earlier. R. 32-33. He stated that the last work he did was "customer service, maybe security or clerk." Id. He had worked full-time in the past 15 years, but never for a period longer than "[m]aybe six months." R. 34. Luciano supported himself through friends and family. R. 33.

Luciano told the ALJ that he put January 2011 as his disability date because that was when he started his HIV treatment. R. 35. He discovered he was HIV positive roughly five years prior to the hearing, through a blood test. See R. 35-36. The ALJ asked whether Luciano's HIV status "limit[ed his] ability to work at all," and Luciano responded that his "HIV [was] under control." R. 36. Luciano confirmed that his HIV was not "disabling" to him. Id. Luciano also confirmed that he had no physical problems that limited his ability to work. R. 46-48.

The ALJ noted that Luciano "filed this claim . . . a little more than two years ago," and asked if Luciano had ever "been in a hospital overnight?" R. 30. Luciano said he had stayed in a hospital overnight at Presbyterian the previous year for infections and shingles, but did not know whether this was related to his HIV status. R. 30-31. Luciano had not "been hospitalized overnight anywhere" else. See R. 31. He confirmed that he was receiving treatment for HIV only at Presbyterian. Id.

Luciano lived alone in an apartment paid for by an HIV-status-based housing program

3

called "HASA."[3]  R. 39.  To pay for food, Luciano relied on food stamps, but he paid the electric bill for his apartment on his own.  R. 39, 40.  Luciano paid his electric bill in person with cash.  R. 40-41.  Luciano did not believe he would have an apartment without HASA's assistance, and prior to getting his apartment he was "[g]oing house to house."  See R. 40.  Luciano had a case manager who monitored Luciano to see how he was doing every month, whether Luciano was going to his appointments, and whether he needed help with anything.  R. 41.  The case manager also helped Luciano with other things, like "the program" and "doctors."  Id.

When asked about why his earnings record did not "really show very much in earning in any years," Luciano said that he had been "dealing with situations, moving many places and . . . never had some kind of stability . . . in living," and that it was "hard . . . to deal with situations."  R. 33.  Luciano suggested that the reason he worked as a security guard for only six months was because he "didn't feel comfortable."  R. 35.  Similarly, Luciano testified that it was sometimes "impossible to be around other people," that he sometimes suffered from anxiety, that he would get nervous, and that it was sometimes hard to "deal with situations under pressure."  R. 36.  Luciano was receiving treatment for these issues.  Id.  Luciano was also taking medication for his "psychological condition."  R. 42.  He felt better while using medication but stated that "it's just like insomnia and anxiety is still there sometimes, some days better, some other days worse."  Id.

Luciano's discomfort with being around other people could arise either in one-on-one situations or in group interactions.  R. 37.  When asked if he had any friends, Luciano responded

---

[3] HASA is the New York City HIV/AIDS Services Administration, which provides, among other things, assistance with applying for Supplemental Nutrition Assistance Program benefits and emergency and non-emergency housing.  See HIV/AIDS Services, NYC Hum. Resources Admin., https://www1.nyc.gov/site/hra/help/hiv-aids-services.page.

that he had "a few people that [he knew]," but said these people were not what he would call friends. Id. Luciano said it was hard to make friends, that he felt better to be on his own, and he did not like to be with other people. R. 37-38. When the ALJ asked Luciano if he had any difficulty performing day-to-day activities, Luciano did not directly respond, but stated that he cooked because he had to and did laundry at a public laundromat when he had no choice — which was roughly once a month. See R. 38. Luciano also said he did not shower or dress himself daily, because there was no need, as he sometimes did not leave his apartment for days at a time. R. 38-39. Luciano would go grocery shopping on his own, though he did not like to do so. See R. 45-46.

In addition to experiencing anxiety, Luciano stated that he could not "concentrate for too long" because he would "either get tired or bored." See R. 41-42. Luciano believed that his mental/psychological condition was the biggest problem preventing him from working. R. 42, 48. With this in mind, he did not think he would be able to maintain a normal 40-hour work week, with daily work, because he had never done it before and because he could not do the same thing for a long time without getting anxious. See R. 42. According to Luciano, even applying for a job would induce anxiety and he would not be able to work for an employer due to his being nervous, scared, or insecure — if his condition even allowed him to fill out a job application. R. 48-49. Luciano stopped applying to jobs because he did not "want to disappoint more places" nor "waste people's energy." See R. 49.

Luciano felt depressed "[p]retty much every day," and did not sleep very much. R. 43. In response to the ALJ's question of whether his depression or anxiety interrupted his ability to do things, Luciano said that when he planned to do something, he often postponed it over and over again for weeks. See R. 43-44. This habit was a mental issue, not a physical one. R. 44.

5

At the conclusion of the hearing the ALJ reminded Luciano that the ALJ would seek additional records from Metropolitan and Presbyterian before rendering a written decision. R. 49-50. On March 3, 2015, the ALJ did in fact issue subpoenas to these medical institutions. R. 429, 444.

The ALJ also submitted interrogatories to a vocational expert, R. 258, seeking to determine if jobs existed in the national economy for a person who is "limited to work that does not involve more than occasional, superficial interaction with coworkers or the public" and "limited to work that does not require the ability to carry out complex duties or instructions." R. 259. The vocational expert responded that such a person could perform at least three jobs in the national economy: "Marker," DOT Code 209.587-034, an occupation with 50,000 jobs nationally that required light strength; "Kitchen Helper," DOT Code 318.687-010, an occupation with 167,000 jobs nationally that required medium strength; and "Cleaner, Hospital," DOT Code 323.687-010, an occupation with 100,000 jobs nationally that required medium strength. R. 260. The ALJ provided a copy of the response to Luciano and informed him of his right to submit additional questions to the expert, respond, or request a hearing. R. 263-64. It appears that Luciano requested no further action.

### C. Medical Evidence

The Commissioner has provided a summary of the medical evidence contained in the administrative record. See Def. Mem. at 4-15. Plaintiff has not objected to the summary and his own recitation of the evidence is consistent with that of the Commissioner. See Pl. Mem. at 4-11. Accordingly, the Court adopts the plaintiff's and the Commissioner's summaries of the record as accurate and complete for purposes of the issues raised in this suit. We discuss the medical evidence pertinent to the adjudication of this case in section III below.

D.  The ALJ's Decision

The ALJ denied Luciano's application for benefits in a written decision on July 30, 2015. R. 7-17.  The ALJ determined that Luciano had "not engaged in substantial gainful activity since December 31, 2012," the date Luciano filed for disability benefits.  R. 9.  The ALJ also determined that Luciano had several "severe impairments," including "post-traumatic stress disorder (PTSD); depression; anxiety; avoidant personality disorder; and borderline intellectual functioning."  R. 9-10.  However, the ALJ found that none of these impairments — and no combination of these impairments — rose to the level of severity of any impairment listed in 20 C.F.R. part 404, subpart P, appendix 1.  R. 10-12.  In making this finding, the ALJ specifically looked at listings 12.04 (affective disorder), 12.05 (intellectual disability), and 12.06 (anxiety-related disorder).  Id.

The ALJ then considered Luciano's residual function capacity ("RFC").  After considering the entire record, the ALJ found that Luciano had the RFC to "perform a full range of work at all exertional levels," as long as that work involved no more than "occasional, superficial interaction with coworkers or the public and [did] not require the ability to carry out complex duties or instructions."  R. 12-15.  The ALJ considered Luciano's testimony as to the severity of his mental problems and those problems' effect on his ability to work.  R. 12.  The medical record, while showing that Luciano did have severe impairments, did not support Luciano's testimony as to the extent of those impairments.  R. 12-13.  In consideration of the entire record, the ALJ found that Luciano's impairments "could reasonably be expected to cause some of the alleged symptoms," but that Luciano's statements about "the intensity, persistence and limiting effects of these symptoms [were] not entirely credible."  R. 14.

The ALJ determined that, based on Luciano's sporadic and sparse work history, he had

7

no past relevant work to which his RFC could be applied. R. 15. Thus, the ALJ examined whether there existed jobs "in significant numbers in the national economy" that Luciano — as a younger individual with a high school education — could perform with his RFC. Id. The ALJ recognized that Luciano's "ability to perform work at all exertional levels ha[d] been compromised by nonexertional limitations." R. 16. Nevertheless, based on the responses of a vocational expert to interrogatories submitted after the conclusion of the hearing, the ALJ determined that Luciano could perform the work of a marker, a kitchen helper, and a hospital cleaner. Id. Because of Luciano's ability to perform work with his impairments, the ALJ found that Luciano was not under a disability since the time of his application, and thus not eligible for Supplemental Security Income. R. 16-17.

## II. GOVERNING STANDARDS OF LAW

### A. Scope of Judicial Review Under 42 U.S.C. § 1383(c)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (internal quotation marks omitted) (quoting Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012)); accord Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008); see also 42 U.S.C. §§ 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."), 1383(c)(3) ("The final determination of the Commissioner of Social Security . . . shall be subject to judicial review as provided in section 405(g) . . . ."). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (quoting Consol. Edison

Co. v. NLRB, 305 U.S. 197, 229 (1938)); accord Selian, 708 F.3d at 417; Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 447-48 (2d Cir. 2012) (per curiam).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (internal quotation marks omitted) (quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)); accord McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.") (citing Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982)). The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault, 683 F.3d at 447-48 (citing Dickinson v. Zurko, 527 U.S. 150, 153 (1999)). "The substantial evidence standard means once an ALJ finds facts, [a reviewing court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. at 448 (emphasis in original) (internal quotation marks omitted) (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (internal quotation marks omitted) (quoting Hernandez v. Barnhart, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007)).

B. <u>Standard Governing Evaluation of Disability Claims by the Agency</u>

9

For purposes of Supplemental Security Income, the Social Security Act considers a person "disabled" if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 1382c(a)(3)(B).

To evaluate a claim of disability, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. § 416.920(a)(4); see also McIntyre, 758 F.3d at 150 (citing Burgess, 537 F.3d at 120) (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(I). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. § 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical

10

or mental ability to do basic work activities," id. § 416.920(c). Third, if the claimant's impairment is severe and "meets or equals" one of the listings in 20 C.F.R. part 404, subpart P, appendix 1, and "meets the duration requirement," the claimant must be found disabled. Id. § 416.920(a)(4)(iii). Fourth, if the claimant's impairment does not meet or equal one of the listed impairments, or does not meet the duration requirement, the Commissioner must review the claimant's RFC to determine if the claimant is able to do the work he or she has done in the past, i.e., "past relevant work." Id. § 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permit the claimant to do other work. Id. § 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. The claimant bears the burden of proof on all of these steps except the final one — that is, proving that there is other work the claimant can perform. See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

III. DISCUSSION

Luciano challenges the ALJ's decision on three grounds: (1) that the ALJ failed to develop the record by obtaining medical source statements from Luciano's treating physicians and failed to inform Luciano of his "right to secure a medical source statement and present it in support of his claim"; (2) that the ALJ erroneously determined that HIV was not a severe impairment; and (3) that the ALJ did not proffer post-hearing evidence to Luciano before entering it into the record and relying on it in making a disability determination. Pl. Mem. at 1, 12, 15, 16.

A. <u>ALJ's Development of the Record Related to Medical Source Statements</u>

When an ALJ assesses a claimant's alleged disability, an ALJ must develop the claimant's medical history for at least the 12 months preceding the determination. See <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000) ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings . . . .") (citing <u>Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998); and <u>Echevarria v. Sec'y of Health & Human Servs.</u>, 685 F.2d 751, 755 (2d Cir. 1982)); <u>accord</u> <u>Sims v. Apfel</u>, 530 U.S. 103, 111 (2000) (ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits") (citing <u>Perales</u>, 402 U.S. at 400-01); 20 C.F.R. § 416.912(b) (noting that the agency "will develop [an applicant's] complete medical history for at least the 12 months preceding the month in which [the applicant] file[s his] application"). The governing regulation provides that the ALJ "will make every reasonable effort to help [an applicant] get medical evidence from [his] own medical sources." 20 C.F.R. § 416.912(b). An ALJ has a duty to develop the record regardless of whether the claimant is represented by counsel. <u>Tejada v. Apfel</u>, 167 F.3d 770, 774 (2d Cir. 1999) (citing <u>Pratts v. Chater</u>, 94 F.3d 34, 37 (2d Cir. 1996)); <u>accord</u> <u>Cancel v. Colvin</u>, 2015 WL 865479, at *5 (S.D.N.Y. Mar. 2, 2015) (citing <u>Perez</u>, 77 F.3d at 47; and <u>Kilkenny v. Astrue</u>, 2009 WL 1321692, at *15 (S.D.N.Y. May 12, 2009)).

On the other hand, it is well established that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing <u>Perez</u>, 77 F.3d at 48). If an ALJ has "already . . . obtained and considered reports" from treating physicians, the ALJ may have "before him a complete medical history, and the evidence received from the treating

12

physicians [may be] adequate for him to make a determination as to disability." Perez, 77 F.3d at 48.

Luciano claims that the ALJ erred by not seeking "medical source statements" from Luciano's treating physicians and by not at least informing Luciano of his ability to obtain such statements. Pl. Mem. at 12-15. By not arguing to the contrary, the Commissioner implicitly concedes that the ALJ failed to do both of these. See Def. Reply at 4-8.

The relevant regulation in effect at the time that the ALJ rendered his decision stated that the Commissioner "will request a medical source statement about what you can still do despite your impairment(s)," though the regulation also stated that "the lack of the medical source statement will not make the report incomplete." 20 C.F.R. § 416.913(b)(6) (2015). The regulation also stated that "[m]edical reports should include . . . [a] statement about what [a claimaint] can still do despite [his] impairment(s)." Id.

In Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29 (2d Cir. 2013) (summary order), the Second Circuit held that "remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." Id. at 34 (citations omitted). The court in Tankisi found it important, however, that the "extensive" medical record in that case — developed by the claimant's attorney — contained "an assessment of [the petitioner's] limitations from a treating physician." Id. Here, by contrast, there are assessments only from consultative examiners, not from any treating sources.[4] Additionally, the treatment notes in the

---

[4] We are aware that Dr. Khalil, a treating physician, checked a box indicating that Luciano showed "[m]arked limitation in maintaining social functioning" and declined to check a box stating that he had "[m]arked limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." R. 327 (capitalization omitted). However,

13

medical record do not clearly address any limitations Luciano may have. Moreover, Luciano was acting pro se during the hearing.

While it is a close question, we conclude this action must be remanded to request such statements from treating sources. This course has been followed in other cases where, as here, the record is not voluminous and there is little information as to what treating sources thought about the claimant's limitations. See, e.g., Guillen v. Berryhill, 2017 WL 4279335 (2d Cir. Sept. 27, 2017) (remanding where medical records did not "shed any light on [the claimant's] residual functional capacity"); Paredes v. Comm'r of Soc. Sec., 2017 WL 2210865, at *18 (S.D.N.Y. May 19, 2017) (remanding where only a non-examining medical expert opined on petitioner's exertional limitations, and the ALJ did not contact any treating physician to obtain medical source statements); Rivera v. Comm'r of Soc. Sec., 2015 WL 6619367, at *13 (S.D.N.Y. Oct. 30, 2015) (remanding where a single treating physician submitted a "perfunctory assessment" and a form disability checklist of symptoms as to disability related to one of claimant's diseases); Sanchez v. Colvin, 2015 WL 736102, at *6 (S.D.N.Y. Feb. 20, 2015) (remanding because "[u]nlike in Tankisi, the medical records before the ALJ were not 'voluminous,' and d[id] not 'include an assessment of [petitioner's] limitations from a treating physician'") (quoting Tankisi, 521 F. App'x at 33-34).

The Commissioner's citations to Johnson v. Colvin, 669 F. App'x 44 (2d Cir. 2016) (summary order), and Monroe v. Commissioner of Social Security, 676 F. App'x 5 (2d Cir. 2017) (summary order), Def. Reply at 6-7, do not alter our view. In Johnson, the record actually contained an assessment of claimant's functional limitations, unlike in Luciano's case. 669 F.

---

these notes are too vague and limited to provide a basis for an RFC determination.

App'x at 46 (noting existence of medical source statement that the claimant had "severe functional limitations" prior to surgery). In Monroe, there was also a medical source statement from a treating physician that specifically dealt with the claimant's RFC. 676 F. App'x at 8-9.

Thus, the case is remanded for the ALJ to request medical source statements from appropriate treating sources.[5]

B. Whether HIV is a Severe Impairment

In a brief argument, Luciano contends that the ALJ erred by not finding that his HIV status was a severe impairment and not considering it "at step two of the sequential evaluation." Pl. Mem. at 15; see also Pl. Reply at 1-2.

Luciano notes that Dr. Khalil reported Luciano experienced "fatigue, night sweats, weight [loss], and insomnia," and that at the hearing before the ALJ Luciano had reported being treated for certain ailments. Pl. Mem. at 15. The definition of a "severe" impairment, however, is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The mere fact that an individual has been hospitalized for a condition does not by itself show that the condition limits work activities. And, of course, "mere diagnosis . . . says nothing about the severity of the condition." Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (citation omitted); accord Morse v. Comm'r of Soc. Sec., 2014 WL 4346456, at *10 (N.D.N.Y. Aug. 29, 2014).

Luciano's remaining argument is that Dr. Khalil filled out a form indicating that Luciano had "marked" limitation in maintaining social functioning and in activities of daily living. See

---

[5] Because the case is being remanded, it is not necessary to address Luciano's argument that the ALJ improperly failed to give notice to Luciano that he was relying on medical records from Metropolitan and Presbyterian obtained after the hearing. See Pl. Mem. at 17. On remand, the parties will be on notice that these materials form part of the record.

15

Pl. Mem. at 15 (citing R. 327). The ALJ was not required to accept this conclusion, however. As long as the ALJ gave good reasons for doing so, he was permitted to give little weight to Dr. Khalil's opinion if it was unsupported by the remainder of the record. See Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam); Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). Here, the ALJ found that Dr. Khalil's conclusions were "unsupported by the medical evidence." R. 10. Specifically, the ALJ found Luciano's hearing testimony consistent with the objective medical evidence in showing that Luciano's "HIV ha[d] been under control for several years and is not a disabling condition." Id.

Substantial evidence in the record supported the ALJ's finding. Luciano testified unequivocally that his HIV status was not disabling and did not affect his ability to work. R. 36; see also R. 46-48 (Luciano confirmed that his "biggest problem" and what "ke[pt him] from working" was his "psychological condition," and not any "physical problems"). This comports with reports from the Erie Humboldt Park Health Center which stated that, as of September 12, 2012, and January 17, 2013, Luciano's HIV status had improved. R. 195, 298. According to Luciano's own statements to Dr. Eyassu at Industrial Medicine Associates on February 28, 2013, he was "usually stable" since starting on medication. See R. 352. And, as of August 20, 2014, Luciano's treatment notes at Metropolitan stated: "HIV in control — taking meds." R. 413. There is nothing to indicate that Luciano's HIV status had any bearing on his limitations in working.

Accordingly, the ALJ could properly reject Dr. Khalil's conclusory opinion as contrary to the evidence and find that Luciano's HIV status was not a severe impairment.

16

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Docket # 12) is denied, and Luciano's motion for judgment on the pleadings (Docket # 18) is granted in part and denied in part. The case is remanded to the Commissioner for further proceedings consistent with this decision. The Clerk is requested to enter judgment.

SO ORDERED.

Dated: September 28, 2017
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge